XKBC2PEN kjc

SEALED – DO NOT DOCKET

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,              New York, N.Y.

4              v.                         18 Cr. 15 (AKH)

5  JOHN PENNISI,

6              Defendant.

7  ------------------------------x        Teleconference

8                                         November 12, 2020
                                          10:30 a.m.
9

10 Before:

11              HON. ALVIN K. HELLERSTEIN,

12                                         District Judge

13

14                     APPEARANCES

15

   AUDREY STRAUSS
16      Acting United States Attorney for
        the Southern District of New York
17 BY:  HAGAN C. SCOTTEN
        Assistant United States Attorney
18

19 ANTHONY STRAZZA
        Attorney for Defendant
20

21 Also Present:

22 Special Agent Ted Otto, F.B.I.

23

24

25

XKBC2PEN kjc

SEALED — DO NOT DOCKET

1        (Case called)

2        THE DEPUTY CLERK:  Counsel, please state your

3    appearances for the record.

4        MR. SCOTTEN:  Good morning, your Honor.  This is Hagan

5    Scotten for the government.

6        MR. STRAZZA:  Good morning, your Honor.  Anthony

7    Strazza, appearing for Mr. Pennisi.

8        THE COURT:  And Mr. Pennisi is on the line, correct?

9        THE DEFENDANT:  Yes.  Good morning, your Honor.

10        THE COURT:  Good morning, Mr. Pennisi.

11        Before we get into the substance of the sentencing,

12    let me take care of a few things.

13        First of all, upon application of the defendant, this

14    proceeding will be sealed.  There are aspects of it that will

15    reveal various personal matters and other important and

16    fundamental aspects of the sentencing which warrant it to be

17    sealed.

18        I understand from counsel, both government and defense

19    counsel, that certain parts of the record can be released to

20    the public and others may be redacted for privacy.  I have an

21    application from a gentleman named Jerry Capeci, who writes on

22    the stationery of Gangland News and makes a motion to disclose

23    all aspects of this proceeding.  That motion is denied.  I need

24    instruction from counsel how formally to do that since there is

25    no ECF record of this case.

XKBC2PEN kjc
SEALED - DO NOT DOCKET

1          May I have any such comments, any such advice?

2    Mr. Scotten?

3          (Pause)

4          THE COURT:  Hello?  Is Mr. Scotten on the line?

5          MR. SCOTTEN:  Sorry, your Honor.  I put myself on mute

6    and then started talking.

7          So, your Honor, my suggestion is that, after today's

8    proceeding, the parties will propose redactions to the

9    transcript.  We will also submit a consent order to your Honor

10   in which we consent to the unsealing of certain other matters

11   in the case, including the charging instrument, at which point

12   Mr. Pennisi's case will appear on the docket for U.S. v.

13   Cammarano, because Mr. Pennisi's charging instrument was a

14   superseding information in that case.  At that point there will

15   be a public docket, and the Court can post both any documents

16   that it feels should be unsealed, as well as any order the

17   Court issues with respect to what remains sealed and unsealed

18   on that docket.

19         THE COURT:  That will be fine.  Thank you.

20         Any comment or objection, Mr. Strazza?

21         MR. STRAZZA:  No, your Honor.

22         THE COURT:  The next thing is to make the findings

23   that are required under the CARES Act.

24         Mr. Pennisi, you have a right to be sentenced in open

25   court.  Because of the coronavirus pandemic that has been

XKBC2PEN kjc
SEALED - DO NOT DOCKET

1    difficult.  There only are a few courtrooms that are available,

2    so it's a scarce resource and therefore requires waiting.

3         Secondly, there are quarantine aspects, so that if you

4    appear in court, you then have to go back, if you go back into

5    custody, you will have to be --

6         THE DEPUTY CLERK:  He's out.  He is out on bail.

7         THE COURT:  Thank you, Brigitte.

8         So even on bail, there are various complications and

9    difficulties.

10        I understand from Mr. Strazza that Mr. Pennisi would

11   like to proceed and be sentenced in this fashion on the

12   telephone with counsel accessible and government counsel

13   present.  Is that so, Mr. Pennisi?

14        THE DEFENDANT:  Yes, your Honor.

15        THE COURT:  Well, I find that it is in the interests

16   of justice that we proceed, that appearances in court are

17   difficult and would require a delay, and that even a proceeding

18   through a televised method, a video method, would also involve

19   delays.  So we will go ahead in this fashion.  I find that it

20   is in the interests of justice to do that and it is in the

21   interest of Mr. Pennisi to do that because there are various

22   choices that he must make that await being sentenced.  So

23   timely sentencing is important to him.

24        The third aspect that we need to take care of, before

25   we proceed into the substance, is to ask Mr. Scotten's

XKBC2PEN kjc
SEALED – DO NOT DOCKET

1    confirmation that the commands of *Brady v. Maryland* have been

2    performed and satisfied in this case.

3            I have the obligation to inform Mr. Scotten, the

4    government must disclose to the defense all information

5    favorable to an accused that is material either to guilt or to

6    punishment and that is known to the government.  And this

7    obligation applies regardless of whether the information itself

8    would constitute admissible evidence.  The government must

9    disclose such information to the defense promptly after its

10   existence becomes known to the government so that the defense

11   may make effective use of the information in the preparation of

12   its case.  And that applies also to *Giglio* materials and it

13   applies in instances where there has been a plea of guilty.

14           Mr. Scotten, would you confirm that the government has

15   satisfied its *Brady* obligations?

16           MR. SCOTTEN:  Yes, your Honor.  The government believe

17   that is it has satisfied all of the obligations that your Honor

18   just outlined.

19           THE COURT:  Is there any comment, Mr. Strazza?  Have

20   you received full information about the case?

21           MR. STRAZZA:  Yes, your Honor.

22           THE COURT:  All right.  There will be a formal order

23   that will be filed with this case, so that this order is both

24   written and orally given.

25           With that, we are ready to sentence you, Mr. Pennisi.

XKBC2PEN kjc

SEALED - DO NOT DOCKET

1    The first step in this sentencing is to review the

2   guidelines.  You are charged with two crimes -- a racketeering

3   conspiracy and, second, carrying and using a firearm for a

4   crime of violence.  Because of various decisions in the Supreme

5   Court and the Second Circuit, there is serious doubt whether

6   the second count is viable, and I take it that the government

7   is proposing to dismiss it.

8          MR. SCOTTEN:  That is correct, your Honor.

9          THE COURT:  Count Two is therefore dismissed, leaving

10   only the racketeering conspiracy charge.

11          Now, Mr. Pennisi is 50 years old.  He has spent one

12   day in detention, having been arrested and released on May 15,

13   2018.  He is a United States citizen.

14          He pleaded guilty before me May 16, 2018.

15          The calculations under the sentencing guidelines are

16   rather complicated.  I'm to calculate a custodial sentence, but

17   not to sentence necessarily, I'm to calculate a custodial

18   sentence according to the racketeering acts alleged in the

19   indictment.  There are five of them.  They go from extortion to

20   illegal gambling, and I think those are the same, but repeated

21   against different individuals, so there are five.  I am

22   supposed to take the highest of these incidents.

23          The sentencing guidelines assign 20 points to the

24   extortion crimes and 19 to the gambling crimes, so the 20 will

25   be the infraction point.

XKBC2PEN kjc
SEALED - DO NOT DOCKET

1    Then I am supposed to group these, and there are

2    instructions on how to group.  The grouping amounts to five.

3    They are adjusted upwards from the offense level of 20, which

4    creates a net offense level of 25 from which three levels of

5    acceptance of responsibility on a timely basis are to be

6    deducted, leaving a net offense level of 22.

7    Then there are the criminal history points.

8    Mr. Pennisi was conducted of manslaughter in the first degree

9    in 1989.  He gets three points for that.  The net offense level

10   of 22, in criminal history category II, comes to a custodial

11   sentence, according to the guidelines, of 46 to 57 months.

12   Do I have that correctly, Mr. Scotten?

13   MR. SCOTTEN:  Your Honor, the government hasn't taken

14   an independent position on the guidelines in this case because

15   of the 5K1, but we have no objection to your Honor's

16   calculations.

17   THE COURT:  Mr. Strazza?

18   MR. STRAZZA:  No objection to the calculation.

19   THE COURT:  I find that the sentencing guidelines

20   yield a custodial range of punishment of 46 to 57 months.

21   There was no restitution in this case.

22   Is the government pursuing forfeiture in this case?

23   MR. SCOTTEN:  We are not, your Honor.

24   THE COURT:  There is no forfeiture in this case.

25   There is supervised release of two to five years.

XKBC2PEN kjc

SEALED - DO NOT DOCKET

1          With that, I think the next step will be, I think, the

2     5K motion.

3          Mr. Scotten.

4          MR. SCOTTEN:  Thank you, your Honor.

5          The government does move, for reasons set forth in its

6     letter to the Court, that the defendant be sentenced pursuant

7     to 5K1.1 of the U.S. Sentencing Guidelines.

8          THE COURT:  The motion is granted without objection.

9          Mr. Strazza, you may speak.

10         MR. SCOTTEN:  Thank you, your Honor, and I will be

11    brief, both --

12         THE COURT:  You don't have to be brief.  I have your

13    letters, but I am interested in what you say.

14         MR. SCOTTEN:  Okay.

15         MR. STRAZZA:  Just -- your Honor -- Hagan, I don't

16    mean to cut you off -- or, Mr. Scotten, I don't mean to cut

17    you off.  I know the Judge had just said Mr. Strazza.  So I

18    want to make sure that the judge is aware of who is speaking

19    right now.

20         THE COURT:  Who is speak right now?

21         MR. SCOTTEN:  I was speaking, your Honor.  But if you

22    said Mr. Strazza, you probably wanted to hear from the defense

23    attorney.  So I will let you say again who you want to speak.

24         THE COURT:  Well, I imagined that you were finished,

25    Mr. Scotten.  Did you want to elaborate on the cooperation?

XKBC2PEN kjc
SEALED - DO NOT DOCKET

1          MR. SCOTTEN:  I'm happy to, your Honor, and that is

2     why I was going to be brief, because I know your Honor wants to

3     hear mostly from Mr. Strazza in this circumstance, so I will

4     try to be short.

5          Really just three points, your Honor:

6          The first was, I wanted to be clear, in case it

7     didn't come through accurately in the government's letter,

8     that the case is somewhat unusual in that Mr. Pennisi

9     essentially provided all of the evidence against himself.  He

10    approached the government without being charged or even

11    approached or threatened with charges by any law enforcement

12    agency.

13         So, for example, when your Honor asked about the

14    government's disclosure obligation, although we are not aware

15    of any *Brady* or *Giglio*, we have also produced no discovery in

16    this case because the way this case unfolded essentially is

17    Mr. Pennisi came to see the F.B.I. and said, I have a bunch of

18    stuff I want to tell you guys, and then the F.B.I. took notes,

19    and Mr. Pennisi essentially pled guilty to the crimes which he

20    himself brought to the government's attention.

21         THE COURT:  He came with counsel, did he not?

22         MR. SCOTTEN:  He did not, your Honor.  He initially

23    came by himself to the F.B.I., and he met with the F.B.I. on

24    numerous occasions.  I wasn't present for those meetings, but I

25    think it was approximately five to ten meetings.

XKBC2PEN kjc
SEALED - DO NOT DOCKET

1    And then at the conclusion of that process, the

2  F.B.I. said, look, if you are going to go forward with this,

3  you are probably going to have to plead guilty to something,

4  and you are going to need representation.

5    At that point, the F.B.I. reached out to me and I

6  contacted the CJA panel.  Mr. Strazza was appointed pursuant to

7  CJA and got to know his client a bit, and that's when I started

8  meeting with Mr. Pennisi, after he had been appointed counsel.

9  But he had several months of meetings with the F.B.I. where he

10  was unrepresented.

11    THE COURT:  Okay.  Go ahead.  Proceed.

12    MR. SCOTTEN:  And so -- and it's not sort of that

13  meant that he did the proffer process twice.  As far as we can

14  tell, he essentially gave all of his information to the F.B.I.

15  in a sort of witness category, and then we went through it

16  again with counsel for the government and Mr. Pennisi present

17  to fashion the plea, which he ultimately entered before your

18  Honor.

19    The one aspect of Mr. Pennisi's proffer that I just

20  wanted to stress, in addition to everything that's in our

21  letter, is we did find that it was remarkable for its initial

22  accuracy.  Obviously the government does not sign up a witness

23  they don't believe to be accurate; but, as your Honor is

24  probably aware, often the proffer process involves a

25  back-and-forth, where defendants attempt to minimize some

XKBC2PEN kjc
SEALED – DO NOT DOCKET

1    aspect of conduct that they feel puts them in a worse light.

2    We never encountered any of that with Mr. Pennisi who, so far

3    as we are aware, always was forthright about all of the facts

4    that he thought of, including anything that was bad for him.

5            Of course, as in any one of these processes, he would

6    remember details later on, but there was no sense, as there

7    sometimes is, that the details he did not initially bring forth

8    were in any way withheld to make himself look better.  They

9    were random details that you would expect from anybody's normal

10   functioning of memory.

11   ████████████████████████████████████████

12   ██████████████████████████████████████

13   ███████████████████████████████████████

14   ████████████████████████████████████

15   ███████████████████████████████████████

16   ██████████   ██████████████████████

17   ████████████████████████████.

18           Other than that, I'm happy to answer the Court's

19   questions.

20           THE COURT:  How do I provide for supervision?  Provide

21   for the supervision in the district of his residence?

22           MR. SCOTTEN:  That's correct, your Honor.

23           THE COURT:  Okay.

24           Now, your letter, and secondarily the PSIR, describes

25   a long period of criminal involvement on the part of

XKBC2PEN kjc
SEALED - DO NOT DOCKET

1    Mr. Pennisi, first as a member of the Gambino gang and then

2    afterwards for the Lucchese gang.  There is evidence of

3    problems within the gangs, and one possible explanation for

4    Mr. Pennisi's conduct is that he looked upon his government

5    cooperation as a means of saving his life from continued

6    involvement in the activities of the gangs.

7            What do you say about this inference I am taking?

8            MR. SCOTTEN:  So I think that inference is accurate,

9    your Honor, and I don't think Mr. Pennisi would deny it.  I

10   have put Mr. Pennisi on as a witness twice, once in front of

11   your Honor, and I think he has always been very up front that

12   that is why he sought out the F.B.I.  It is not that he had a

13   change of heart and decided he wanted to come forward and

14   become a witness because he wanted to fight the Mafia.  He most

15   definitely came forward because he wanted to -- he feared for

16   his life.  He thought the Lucchese family was trying to kill

17   him, and so that is why he sought out the F.B.I.  I don't think

18   there is any dispute about that.  To the extent that your

19   Honor's question --

20           THE COURT:  I would normally have to account for

21   criminal activity and consider that in relationship to

22   cooperation.

23           I will ask you this, Mr. Scotten, if I were to

24   sentence Mr. Pennisi to a jail term, what security would there

25   be?  Is there danger that he would suffer some real prejudice

XKBC2PEN kjc
SEALED – DO NOT DOCKET

1   to his life and limbs if he were in jail?

2          MR. SCOTTEN:  There is, your Honor.  Obviously we

3   would take measures to protect Mr. Pennisi, but unfortunately

4   the organization that he cooperated against is not a sort of

5   local gang with a limited presence where we can move him to

6   areas --

7          THE COURT:  They have a lot of representation in the

8   jail, too.

9          MR. SCOTTEN:  They have a lot -- that's exactly right,

10  your Honor, they have a lot of representation.  And, frankly,

11  something we have seen in this case with other defendants and

12  other witnesses is they are very adept at hiring other people.

13  Even if Mr. Pennisi were put in a jail where there were no

14  members of *La Cosa Nostra*, they have no problem reaching out to

15  any one of a number of other criminal organizations or

16  freelancers, of whom there are many in prison and seeking to do

17  harm, and it would be very difficult to be certain we had

18  concealed Mr. Pennisi's identity obviously.  You can imagine --

19         THE COURT:  If I were not to give a custodial

20  sentence, what do you think the attitudes at sentence would be

21  in the communities that are interested?  Would there be a

22  lessened respect for law because an opportunity is given to an

23  individual to talk his way out of a severe criminal punishment?

24         MR. SCOTTEN:  I don't think so, your Honor, for two

25  reasons.  The first was the same reason I hit on initially,

XKBC2PEN kjc
SEALED - DO NOT DOCKET

1   which was that he approached us himself, and I agree with your

2   Honor that he didn't do that out of the goodness of his heart

3   but, rather, to protect himself.

4          At the same time, where we often have the greatest

5   concerns about setting up those bad incentives is when somebody

6   has been charged and, as you say, talks their way out of a

7   sentence, knowing that they are guilty.  Mr. Pennisi did not --

8   he wasn't in a situation where he had no recourse.  He was not

9   charged.  He was not approached.  And in fact the government

10  did not really have any evidence against him, certainly the

11  investigators who --

12         THE COURT:  You made that point, that the government

13  did not know of information that would cause it to indict or

14  bring a case before the grand jury against Mr. Pennisi.  They

15  learned the facts of these guilty activities from Mr. Pennisi

16  following his voluntary appearance with the F.B.I.  Is that

17  correct?

18         MR. SCOTTEN:  That's correct, your Honor.  And I guess

19  the way it bears on your Honor's question is just that I think

20  in that case there is much less of a sense of getting away with

21  it because he would have gotten away with it had he not come to

22  see us --

23         THE COURT:  Right.

24         MR. SCOTTEN:  -- and, frankly, everybody is better off

25  that he chose to come in and give us this information, even if

XKBC2PEN kjc

SEALED – DO NOT DOCKET

1    one of benefits is the protection of his own life from the

2    Mafia.

3              THE COURT:  And he is going to leave the community

4    just as soon as he can.

5              MR. SCOTTEN:  I mean, essentially he already has, your

6    Honor.  We have been trying to keep him safe in various ways

7    for the last two years since he approached us, and one of the

8    reasons that expedited sentencing seems appropriate is we need

9    to reach some sort of permanent way to keep him safe, which we

10   can't do so long as we know he is going to have to come back to

11   the sentenced.

12             THE COURT:  Okay.  Thank you very much.

13             Mr. Strazza.

14             MR. STRAZZA:  Thank you, your Honor.  I would like

15   to start off by quoting a paragraph from our sentencing

16   submission that I think captures the essence of why we are all

17   here today:

18             "Mr. Pennisi is an Italian American who grew up on the

19   streets of Howard Beach and Ozone Park, in Queens, New York.

20   He was raised in Italian working class neighborhoods, where

21   organized crime families were prominent and most kid idolized

22   their members.  Mr. Pennisi was one of those kids.  His

23   childhood observations and experiences taught him that being

24   affiliated with an organized crime family was the only path to

25   achieving what seemed like success to him at that time --

XKBC2PEN kjc
SEALED - DO NOT DOCKET

1    money, power, and respect.

2         "Fast forward 35 years.  Mr. Pennisi is now forced

3    to look over his shoulder wherever he goes, fearing that he

4    will be murdered when he least expects it.  He is unable to

5    avoid constant reminders that his friends, and even some

6    family members, no longer have any respect for him.  He is

7    in jeopardy of losing his freedom for a second time, after

8    already having lost it for a period of 17 years, and he has

9    very little money."

10        The reason I reread that, your Honor, is because I

11   think it really captures Mr. Pennisi's situation.  As his

12   letter to the Court explains, he does not make excuses for

13   how he ended up involved with organized crime.  He takes

14   full responsibility for it.  But his situation right now just

15   is  the exact opposite of what he thought being affiliated

16   with this kind of life would bring him.  And when he made the

17   decision to walk in to that F.B.I. office almost two years

18   ago or a little more than two years ago now, he knew, he

19   knew that that decision was permanent, he knew it was

20   irrevocable, and he knew there were going to be severe

21   consequences to it.

22        I heard the Court's exchange with Mr. Scotten

23   regarding why he decided to do that, and there is no doubt

24   about it, that his life was in danger, and that was certainly

25   one way to seek protection.  But he could have ran.  He could

XKBC2PEN kjc
SEALED - DO NOT DOCKET

 1    have gone into the F.B.I. and provided them with a plethora of

 2    information against other individuals and left out information

 3    about himself.  At that time, this was before he had counsel,

 4    this is before he understood the process, he could have easily

 5    minimized or just completely left out, you know, his

 6    involvement.  The government concedes they did not have

 7    independent evidence of that, and may very well have never

 8    known about it if he didn't volunteer it.

 9           But he didn't do that, and he made the choice to

10    change his life right then and there, knowing he can never go

11    back.  And I think that counts for something, Judge.  I think

12    it counts for something, especially when he made the choice on

13    his own, not after being arrested, not after being counseled by

14    an attorney, and things of that nature.

15           Mr. Pennisi certainly has the ability to be a

16    productive member of society going forward.  ███████████████

17    ███████████████████        ███████████████████████

18    ████████████████████████████████████████████████████

19    ██████████████████████████████████████████████████

20    ██████████████████████████████████████.  So

21    unlike some other cooperators that the Court may have come

22    across, Mr. Pennisi has done nothing but do his best to ██████

23    ████████████████████████████████████████████

24    ████████████████████████████████  keep his head

25    down, and try his best to be a productive member of society.

XKBC2PEN kjc

SEALED – DO NOT DOCKET

1    He has --

2            THE COURT:  What work does he do?

3            MR. STRAZZA:  ████████████████████████████

4    ████████

5    ████████████████████████

6    ████████████  ████████████████

7    ████████████████████████████████████████████

8    ████████████████████████████████████████████████

9    ████████████████

10           MR. STRAZZA:  Thank you.

11           The reason I had to ask, your Honor, is because

12   ████████████████████████████████████████████████

13   ████████████████████████████████████████████

14   ████████████████████  ██████████████████

15   ████████████████████████████████████████████████

16           ██████████  ████████████████

17           ██████████  ████████████  ██████████████

18   ████████████████████████████████████████████

19   ████████████████████████████████████████████████

20   ████████████████████████████

21           ██████████  ████████████

22           MR. STRAZZA:  ████████████████████████

23   ████████        And this is something that just recently happened,

24   and it's one of the reasons why we have requested to have the

25   sentencing date moved up, so that we can address this and move

XKBC2PEN kjc

SEALED – DO NOT DOCKET

1    forward.

2    ████████████████████████ ████████████████

3    ████████████████████████ ████████████

4    ████████████████████████████████████████

5    ████████████████████████████████████

6    ████████████████████████████████████████

7    ████████████.

8           Another consequence and another punishment for his

9    actions, regardless of -- not regardless, but I know your Honor

10   posed the question of whether or not there would be less

11   respect for the law if he were not to receive an incarceratory

12   sentence.  And I respectfully submit that the answer to that is

13   no because of the other punishments that he is receiving and

14   will continue to receive that go along with this choice that he

15   made.  ████████████████████████████████

16   ████████████████████████████████

17   ████████████████ ████████████████

18   ██████ ██████████████████████████ ██████

19   ████████████████████████████████████████

20   ████████████████████████████████████████

21   ████████████████████████ ████████████████

22   ████████████████████████████████████████

23   ████████████████████████████ ██

24   ████████████████████████████████████

25   ████████████████████████████████████

XKBC2PEN kjc

SEALED - DO NOT DOCKET

1  ████████████████████████████████████████████████████

2  ████████████████████████, but he is still suffering the

3  consequences for it.

4          So I do think that's something the Court should take

5  into consideration on fashioning the sentence today, meaning

6  the --

7          THE COURT:  If I were to sentence Mr. Pennisi to time

8  served, what should I do about supervised release.

9          MR. STRAZZA:  So I would suggest that you -- if your

10  Honor is inclined to sentence him to a period of supervised

11  release, it could be done in the jurisdiction where he

12  ultimately ends up and he, as Mr. Scotten said --

13          THE COURT:  ████████████████████████████████████

14  ██████████████

15          █████████████  ███████████████████████████████

16  ███████████████████████████████████

17  ███████████████████████████████

18          █████████████  █████████████████████████████████

19  █████████████  ███████.

20          THE COURT:  So we are talking about the maximum of

21  supervised release, or five years, I think as a potential

22  sentence.

23          Okay.  I think I have got the picture.

24          Mr. Pennisi, do you wish to address me?

25          THE DEFENDANT:  Yes, your Honor.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

XKBC2PEN kjc
SEALED – DO NOT DOCKET

1      I would first like to take responsibility for my

2  decision to become associated to an organized crime family.  I,

3  in the past, have made many poor choices in my life, and

4  allowing myself to become a made member was my most

5  ill-considered choice.

6      As I previously stated in my letter to your Honor, I

7  can blame my upbringing or the neighborhoods in which I was

8  raised in or any other excuses, however, I have no excuses to

9  put forth.  We, as people, have choices in life, and I

10  obviously chose poorly.  Growing up --

11      THE COURT:  I'm sure there are people in your

12  neighborhood, friends of yours, who grew up in a straight and

13  honorable path.

14      THE DEFENDANT:  Exactly.  It doesn't necessarily mean

15  that because I came from XYZ neighborhood that that is all --

16  that was my options.  It was the options that I chose, and I do

17  understand that.  And I make no excuses for myself.

18      Like I said, growing up in these neighborhoods, the

19  sections of Queens, Ozone Park and Howard Beach, that areas

20  that were replete with members of organized crime, it was

21  instilled in me at a young age to never cooperate with law

22  enforcement.  I mean, we were taught that.  And I have lived by

23  that street code for 49 years of my life.

24      And, just, not to correct your Honor, but I am 51.  I

25  know you stated I am 50.  In and around October of 2018, I

XKBC2PEN kjc

1   walked into that federal building and began cooperating and, as

2   Mr. Strazza had stated, knowing very well that that decision

3   was going to be a lifelong decision, but it was one that I

4   made, and not that I have any regret in doing so.

5          Once I began speaking to the agents, I held -- as both

6   Mr. Scotten and Mr. Strazza have stated, I have held nothing

7   back, and I have spoken about crimes that I knew that the

8   government were unaware of that I participated in.  Several

9   people, even family members, have said that it was very foolish

10  of me to do so, that I would ultimately be charged, which, you

11  know, as you know, I have been.  But as I have stated again in

12  my letter, it is definitely part of my atonement, and that's

13  just my personal feeling is that I had to do that and I had to

14  accept responsibility and come clean.  If I was going to change

15  my life, I wanted to do it 100 percent and nothing less.

16         It is not by my words, your Honor, but by my actions,

17  as I, you know, show myself and my family and everybody else

18  that I can be a law-abiding citizen.  You know, I make up for

19  all of my past mistakes by ████████████████████████████

20  ████████████████████████   doing what is right and no longer

21  living any kind of life of crime.

22         Since walking in to that federal building in 2018 to

23  the present day, ██████████████████████████, I have had no

24  contact with law enforcement in a way of committing any crimes,

25  and I have kept my nose clean.  It has taken a toll on me and,

XKBC2PEN kjc

SEALED - DO NOT DOCKET

1  once again, I know I brought this on myself.  Physically and

2  mentally, I just try to live each day with bettering myself as

3  a person.  I -- as Mr. Strazza -- and I won't mention all of

4  the ways in which I kind of sentenced myself, you --

5  Mr. Strazza did a good job at bringing these things up.  I just

6  might add that █████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████

8  ██████████████████████████████████████████████████████

9  ██████████████████████████████████████████████████████

10 ████████████████

11           ████████████  ████████████████████████████████████

12 ████████

13           ████████████████  ████████████████████

14           ████████████  ██████████████████████████████?

15           ████████████████  ████████  ███████████████  █████████████

16 ██████████████████████████████████████████████████████████████

17 ██████████████████████████████████████████████████████████

18 ████████████  ███████████████████████████████████████████████

19 █████████████████████████████████████████████.

20           I -- aside from -- as I say and Mr. Strazza said that

21 I kind of sentenced myself, I know that your Honor must render

22 a sentence, and I respect you and I will definitely respect

23 whatever sentence that your Honor gives, and I thank you for

24 hearing me.

25           THE COURT:  Thank you, Mr. Pennisi.

XKBC2PEN kjc
SEALED - DO NOT DOCKET

1    It is very hard to create a balance between what

2    should come from the commission of crimes and what should be

3    discounted or canceled because of cooperation.  Mr. Pennisi's

4    cooperation was substantial.  He testified at two trials

5    against three individuals, including the leaders of the gang,

6    and thereby put himself into a situation where he was

7    vulnerable to retaliation, and retaliation as much as taking

8    Mr. Pennisi's life.  That was a consequence of his choice.

9    Whether he had to make that choice or not, sometimes when a

10   person fulfills the circumstances and his obligations, the

11   person is entitled to greater merit than if he just decided to

12   do something voluntarily.  But whatever Mr. Pennisi did, he did

13   to the fullest capability, and no one can take fault in his

14   testimony or his willingness to cooperate.

15        His willingness to cooperate also led to various pleas

16   of guilty.  So of the 11 people who were brought to trial two,

17   the bosses, were acquitted, one was found guilty, and the rest

18   pleaded guilty and received sentences of various lengths of

19   time.

20        I think in your case, Mr. Pennisi, to put you in jail

21   would be to create inordinate risks on your life, and therefore

22   I will modify my custom.  My custom is to give a sentence of

23   time where there are criminal acts even in light of later

24   cooperation.  But I will change my custom, because I think

25   putting you in jail makes you a target for retaliation and

XKBC2PEN kjc
SEALED - DO NOT DOCKET

1    endangers your life.

2              I will sentence you to time served.

3              I follow this by five years' supervised release.  The

4    terms of the supervised release are set out in the pretrial

5    investigative report.

6              The mandatory conditions are on the bottom of page 29.

7    The condition at the bottom of page 29 about submitting to a

8    drug test is suspended based on my determination that you pose

9    low risk of future substance abuse.

10             You must cooperate in the collection of DNA as

11   directed by the probation officer.  I am now on page 30 of the

12   presentence investigative report.

13             And the standard conditions 1 through 12, set out at

14   pages 30 and 31, are imposed.

15             A special condition of submitting to a search is

16   imposed.

17             I decline to order access to requested financial

18   information because there is no financial penalty I am

19   imposing.

20             You will be supervised by the district of your

21   residence.

22             There is a $100 mandatory special assessment which is

23   imposed.

24             There is no restitution in this case, and the

25   government is not pursuing.

XKBC2PEN kjc
SEALED - DO NOT DOCKET

1    THE DEPUTY CLERK:  Judge, how much was the special

2    assessment you said?

3    THE COURT:  $100.

4    THE DEPUTY CLERK:  I thought it was 2.  It's not 2?

5    THE COURT:  The presentence investigative report is

6    incorrect.  It's based on two counts, but of the two counts,

7    one has been dismissed because of various commands of the

8    Second Circuit and Supreme Court.  Count Two is dismissed, so

9    we have only one count.  That's $100.

10    THE DEPUTY CLERK:  Gotcha.  All right.

11    THE COURT:  The government is not pursuing forfeiture,

12    so that's out.

13    If I were to impose community service, Mr. Strazza,

14    would that impose a hardship or a risk?

15    MR. STRAZZA:  I think so, Judge, and I'm not trying

16    to --

17    THE COURT:  No, no.

18    MR. STRAZZA:  -- shirk --

19    THE COURT:  No, I will suspend from imposing it.

20    MR. STRAZZA:  Thank you, your Honor.

21    THE COURT:  I think I have covered everything except

22    to advise you, Mr. Pennisi, that you have a constitutional

23    right to appeal.  If you can't afford a lawyer, a lawyer will

24    be provided free of charge.  If you wish to appeal, you should

25    so advise Mr. Strazza, and Mr. Strazza will have the obligation

XKBC2PEN kjc

1    to notice appeal on a timely basis.

2              Are there underlying counts, Mr. Scotten?

3              MR. SCOTTEN:  There are no underlying counts, your

4    Honor.  The sole charging instrument here was the information

5    before your Honor, and I think your Honor already dismissed the

6    firearms count we wanted to dismiss.

7    ███████████████████████████████████████████████

8    ███████████████████████████████████████████

9    ███████████████████████████████

10   ████████████    ████████

11   ██████████████    ██████████████

12   ██████████  ███████  ██████  ████████████  ███

13   █████████████████  ████  ██████████████

14   ████████████████████████████████████

15   ████████████    ████████████

16             THE COURT:  Now, will the judgment be filed in this

17   new ECF number?

18             MR. SCOTTEN:  I think so, your Honor.  I don't see any

19   reason that we would even need to redact the judgment, although

20   I suppose if we could ask the Court to ask the deputy to send

21   us a copy before it is filed, so that --

22             THE COURT:  I think you should --

23             MR. SCOTTEN:  -- we can make sure we are not going to

24   propose redactions.

25             THE COURT:  I think the judgment should be under

XKBC2PEN kjc

SEALED - DO NOT DOCKET

1    seal --

2           MR. SCOTTEN:  Okay, your Honor.

3           THE COURT:  -- because the judgment itself will be a

4    giveaway.

5           MR. SCOTTEN:  Yes, your Honor.  I mean, just to be

6    clear, what we are mostly seeking to protect is anything about

7    his location, ███████████████████████.

8           THE COURT:  Look.  You are more qualified than I to

9    decide what should be public and what should not be public.

10          MR. SCOTTEN:  We will make a submission, your Honor,

11   and you can decide if you agree with our recommendation.

12          THE COURT:  All right.

13          Is there anything else?

14          MR. SCOTTEN:  Not from the government, your Honor.

15   Thank you.

16          THE DEPUTY CLERK:  Yes.  I got a question.  You said

17   there is going to be a new docket number?  He is not going to

18   be on 18 Cr. 15?

19          MR. SCOTTEN:  No.  I believe it will be on 18 Cr. 15.

20   I believe that the information here is maybe the S9 superseder

21   in that case already, so it will just be a question of adding

22   the relevant documents to the existing docket in 18 Cr. 15.

23   That's my understanding.

24          THE DEPUTY CLERK:  Okay.  So you guys are going to

25   let us know which documents Jim should file on the docket,

XKBC2PEN kjc
SEALED - DO NOT DOCKET

1    correct?

2              MR. SCOTTEN:  Yes.  We sent a letter to the Court on

3    Monday, but of course there are more documents now that there

4    has been a sentencing, so we will send a new e-letter and I

5    think a consent order was what the Court requested.

6              THE COURT:  Right.

7              THE DEPUTY CLERK:  Okay.  Could you cc me on that?

8              MR. SCOTTEN:  Absolutely.

9              THE DEPUTY CLERK:  Thank you.

10             THE COURT:  Is there anything else?

11             MR. STRAZZA:  Not from the defendant.  Thank you, your

12   Honor.

13             THE COURT:  Well, good luck --

14             MR. SCOTTEN:  Not from the government.

15             THE COURT:  -- to you, Mr. Pennisi.  I think every

16   individual is redeemable.  No one is automatically on a path of

17   good or evil.  Good or evil is a choice that's made every day.

18   I think you have made a good, even though difficult, choice.  I

19   think you will have a better life because of it, and I hope

20   that you continue in this life of proper social behavior.

21   ████████████████████████████████        Good luck to you.

22             THE DEFENDANT:  Thank you, your Honor.

23             THE COURT:  Goodbye.

24             THE DEFENDANT:  Bye.

25                             oOo