

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 27, 2020

**BY EMAIL**

**REQUEST TO BE FILED UNDER SEAL**

The Honorable Alvin K. Hellerstein
United States District Judge
United States District Court for the
   Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    **United States v. John Pennisi,**
            **18 Cr. 15 (AKH)**

Dear Judge Hellerstein:

      The defendant, John Pennisi, is currently scheduled to be sentenced by this Court on April 3, 2020, at 11 a.m. In advance of that sentencing, the Government respectfully submits this letter to advise the Court of the pertinent facts concerning the assistance that Pennisi has rendered in the investigation and prosecution of other persons.

      In short, from 2013 to 2018, Pennisi was an inducted ("made") member of the Luchese Family of La Cosa Nostra. In October 2018, Pennisi approached the FBI and began providing information against other members of the Mafia. At the time he began proffering, Pennisi was not facing any charges, nor did the Government possess admissible evidence that he had committed any crimes. Pennisi nonetheless voluntarily pled guilty, pursuant to a cooperation agreement, to an information charging him with two felonies, each carrying a maximum term of life imprisonment, based on information he himself provided. Pennisi subsequently testified at three trials, including one in this Court and another in which the Acting Boss and Underboss of the Luchese Family were convicted. [REDACTED]

      For these reasons, as set forth more fully below, assuming that Pennisi complies with the terms of his cooperation agreement and commits no additional crimes before sentencing, and appears for his sentencing as scheduled, the Government intends to move at sentencing, pursuant to Section 5K1.1 of the Sentencing Guidelines and Section 3553(e) of Title 18, United States

The Honorable Alvin K. Hellerstein, p. 2
March 27, 2020

Code, that the Court sentence Pennisi in light of the factors set forth in Section 5K1.1(a)(1)-(5) of the Guidelines.

### A. Pennisi's Personal Background and Overview of Pennisi's Criminal History



The Honorable Alvin K. Hellerstein, p. 3
March 27, 2020



The Honorable Alvin K. Hellerstein, p. 4
March 27, 2020



### B. Pennisi's Criminal History and Charges

As discussed above, Pennisi was imprisoned for approximately 17 years as a result of a state manslaughter conviction. Pennisi does not have any other criminal convictions. He was once arrested on a narcotics charge, but the charges were dismissed and Pennisi credibly maintains that the narcotics belonged to a friend.

In addition to the extensive mob-related conduct discussed above, Pennisi has admitted participating in fistfights while in prison that were only tenuously related to his organized crime connections. Also while in prison, Pennisi smuggled hair gel, Clorox bleach, and other hygiene products into the jail for his personal use.

In this case, Pennisi pled guilty to two counts: Count One charged Pennisi with conspiracy to commit racketeering, in violation of 18 U.S.C. § 1962(d). Count Two charged Pennisi with using and possessing, and aiding and abetting the use and possession of firearms, some of which were discharged, in furtherance of the racketeering conspiracy charged in Count One, in violation of 18 U.S.C. § 924(c).[1] In light of the Supreme Court's intervening decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), Count Two is void, and the Government will move to dismiss it at sentencing. (It should be noted that although after *Davis* Pennisi faced no mandatory minimum sentence—significantly decreasing his legal incentives to cooperate—Pennisi continued to cooperate completely and without reservation.)

---

[1]   Pennisi had not himself fired a gun in connection with the Luchese Family. He acknowledged, however, that he aided and abetted the underlying racketeering conspiracy, knowing that other members of the conspiracy used firearms and that it was reasonably foreseeable those firearms would be discharged in furtherance of the conspiracy.

The Honorable Alvin K. Hellerstein, p. 5
March 27, 2020

### C. Pennisi's Cooperation

Pennisi has provided extensive, and extremely valuable, cooperation against the Mafia. Pennisi met with the Government whenever asked, arriving punctually and remaining for hours on dozens of occasions; he diligently and carefully searched his memory to answer all queries, never exaggerating or minimizing the extent of his knowledge and involvement; made proactive efforts to cooperate by recording phone calls; and in doing all this helped accumulate a vast amount of otherwise unobtainable evidence against the Mafia. Substantively, his cooperation can best be divided into four categories:

#### 1. Pennisi's Testimony in *United States v. Castelle*

Pennisi first testified before this Court in *United States v. Castelle*, 18 Cr. 15 (AKH). Eugene Castelle, a/k/a "Boobsie," like Pennisi, was a member of the Luchese Family, and the two had briefly belonged to the same crew. Although Pennisi had not taken in part in the substantive crimes at issue in *Castelle*, Pennisi's testimony was vital to proving the most serious count, racketeering conspiracy, against Castelle. Pennisi—the only mafia insider to testify at trial—testified as to the existence of the charged enterprise, and its structure, leadership, and activities. More importantly, Pennisi established Castelle's membership in that enterprise based on his personal interactions with Castelle, and connected Castelle's criminal activity to the enterprise by showing his position in the Luchese Family hierarchy, to include his payments to the Family's leadership. Before it convicted Castelle of the racketeering count, the jury specifically requested Pennisi's testimony.

#### 2. Pennisi's Testimony in *United States v. Madonna*

When Pennisi began cooperating, the Government primarily debriefed him with the intent of calling him as a witness at the October 2, 2019 trial of defendants Matthew Madonna (the Luchese Family's Acting Boss until his arrest in May 2017), Steven Crea Sr. (the Family's Underboss), Steven Crea Jr. (a Captain in the Family), Christopher Londonio (a Soldier in the Family), and Terrance Caldwell (a longtime LCN associate who committed one murder and one attempted murder on behalf of the Family). Crea Jr.'s lawyers, knowing that Pennisi would be a devastating witness against their client, attended Pennisi's testimony in *Castelle*, and after Castelle was convicted, Crea Jr. pled guilty.

Pennisi testified against the remaining four *Madonna* defendants in the second week of October 2019. Pennisi was the first cooperating witness called by the Government. His testimony was extremely valuable for a number of reasons:

*First*, Pennisi established, from personal observations and experiences, the existence, structure, rules, and criminal activities committed by the Luchese Family. Prior to Pennisi approaching the FBI, the Government did not have a made member of the Luchese Family available as a witness, and instead planned to rely on the testimony of several Luchese associates and a made member of the Bonanno Family to prove the charged enterprise. The testimony of a formally inducted member of the Luchese Family about the Family's structure and rules was much more direct and powerful than piecing that information together through multiple

The Honorable Alvin K. Hellerstein, p. 6
March 27, 2020

witnesses.

*Second*, Pennisi established the membership of each of the three "made" defendants in the Luchese Family. Mob rules create a set procedure by which made members learn of each other's status. In order for two members to learn that the other is made, a third member who both already know to be made must introduce them. Under mob protocol, this is the only true way in which to know that a defendant is in fact a member of the mob. Pennisi testified that he had been formally introduced to Madonna, Crea Sr., and Londonio (as well as many important co-conspirators who were discussed during the trial). These introductions included, as is typical, the official rank and Family affiliation of each defendant, meaning Pennisi's testimony also helped prove that Madonna was the Acting Boss, and Crea Sr. the Underboss.

*Third*, Pennisi testified about his detailed involvement in racketeering activity with Madonna and Crea Sr. Pennisi first met Madonna and Crea Sr. at the "Coddington Club," a private social club maintained by the Luchese Family on Coddington Avenue in the Bronx. Early in his period as an associate under Castellucci, Castellucci brought Pennisi to the club, where he was questioned by the leaders and senior members of the Family about his background, in a sort of interview or vetting process.

During the dispute with the Genovese Family over the strip club incident, Pennisi again reported to the Coddington Club, where he met with Madonna and Crea Sr., among others. Pennisi testified about the roles both leaders played in resolving the dispute. Among other things, Crea Sr. told Pennisi what the Genovese Family was claiming about the incident, making clear that Crea Sr. was an interlocutor with that family. This was consistent with other witnesses who testified that Crea Sr. was particularly close with the Genovese through their joint involvement in labor racketeering schemes that were a significant topic in *Madonna*. Madonna told Pennisi a colorful story about how he assured the Genovese that he had not sent Pennisi and his group to the strip club for purposes of asserting Luchese control there—a story in which Madonna made clear his life-and-death authority over Luchese members and associates.

Most usefully with respect to Madonna, Madonna presided at the ceremony where Pennisi, Guzzo, and a third man were formally inducted into the Luchese Family. As part of the ceremony a gun was used—the only direct instance of firearms possession attributed to Madonna at trial—as was a knife, which was given to Pennisi as a remembrance. Among other things, during the ceremony, Madonna required Pennisi to agree to kill for the Family before inducting him, thus helping to prove the murder predicate of the charged racketeering conspiracy. Pennisi also explained the chain-of-command for ordering a murder in the Luchese Family, giving important evidence supporting the conviction of Madonna and Crea Sr. for ordering a murder carried out by the other two trial defendants.

With respect to Crea Sr., in or about 2014, Castellucci directed Pennisi to assault a man named Edward Davidson, and to put Davidson in the hospital. Castellucci provided a photograph of Davidson and his home and business addresses, but did not explain the reason for the assault. Pennisi spent many months trying to carry out the assault, often with other Luchese members or associates, but was never able to catch Davidson in a sufficiently isolated location to complete the crime. At one point during these months, Pennisi was told to suspend his efforts,

The Honorable Alvin K. Hellerstein, p. 7
March 27, 2020

because Davidson had a court appearance and the Family did not want Davidson to appear injured in court. Pennisi noticed that Castellucci typically pressured him after they visited the Coddington Club, where Crea Sr. and Castellucci would privately converse, then Castellucci would press Pennisi to complete the assault afterward. Subsequently, another member of the Family informed Pennisi that the assault was solicited by Crea Sr. due to some type of litigation with Davidson. Publicly available court papers show that Davidson was formerly married to Crea Sr.'s daughter, and as part of the divorce proceedings was contesting the repayment of a $31,000 loan from Crea Sr.

All four trial defendants in *Madonna* were convicted of multiple counts, including racketeering conspiracy and murder in aid of racketeering.

### 3. Pennisi's Testimony in *United States v. Giovinco*

Pennisi provided extremely valuable trial testimony in *United States v. Frank Giovinco*, 18 Cr. 14 (JSR). In that case, Frank Giovinco, a member of the Genovese Family, was charged with racketeering conspiracy and extortion conspiracy. In the December 2019 trial, Pennisi testified about his relationship with Giovinco while the two were incarcerated together in Fishkill Correctional Facility in the late 1990s. Pennisi also testified about several admissions that Giovinco made to him about his membership in the Genovese Family and his relationship to other high-ranking members of the Family. Pennisi further testified that he was formally introduced to Stevie "Mad Dog" Arena as a member of the Genovese Family sometime in late 2017. Arena, who pleaded guilty prior to trial, worked closely with Giovinco in the crimes charged and featured prominently in the Government's proof against Giovinco.

Pennisi's testimony was critical to the Government's proof of Giovinco's and Arena's membership in the enterprise charged in the racketeering conspiracy count. No other witness at trial was a formal member of the Mafia, and no other witness was able to testify from direct knowledge about Giovinco's and Arena's membership in the Genovese Family. The jury found Giovinco responsible for various acts involving extortion, honest services fraud, and unlawful kickback payments related to the Genovese Family's control of two local chapters of a labor union.



The Honorable Alvin K. Hellerstein, p. 8
March 27, 2020

## Analysis of Sentencing Factors

A.  **Section 3553(a) Factors**

In considering the sentencing factors under Title 18, United States Code, Section 3553(a), the Court must take into account (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with educational or vocational training, or medical care or treatment; (3) the kinds of sentences available; (4) the kinds of sentence and sentencing range established for the applicable category of offense; (5) pertinent Sentencing Commission policy statements; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  In connection with these factors, the Government offers the following observations.

In terms of the nature and circumstances of the offense, and the need for the sentence to reflect the seriousness of the offense and provide adequate deterrence to criminal conduct, Pennisi's offenses were serious.  He joined a notorious criminal organization, agreed to use violence (including deadly violence) on its behalf, agreed to take part in murdering several leaders of the enterprise if they refused to step down, attempted to assault and seriously injure an innocent man, and took part in several less serious assaults that actually occurred.   He also participated in extortion, loansharking, operation of an illegal gambling business, and fraud.  Pennisi's conduct was, however, significantly less serious than most defendants both in this case and in *Madonna* (which focused on members and associates of the Luchese Family), and Pennisi derived far less profit from his organized crime activities than most members.   In addition, Pennisi's decision to cooperate is an extremely important mitigating circumstance, particularly given that he did so without being charged with any crime, or even facing prospect of any charges.

B.  **Section 5K1.1 Factors**

Section 5K1.1 of the Guidelines sets forth five non-exhaustive factors that sentencing courts are encouraged to consider in determining the appropriate sentencing reduction for a defendant who has rendered substantial assistance.  *See* U.S.S.G. § 5K1.1(a).  Those factors apply to Pennisi's cooperation as set forth below.

1. "[S]ignificance and usefulness" of assistance (§ 5K1.1(a)(1)).  As explained above, Pennisi provided extremely valuable evidence that helped to convict five made members of the Mafia—including the senior leadership of one of New York's "Five Families"—in three separate trials.  The prospect of his testimony was also likely a decisive factor in securing the guilty plea of another Luchese leader, ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌.  Pennisi's assistance was thus extremely significant and useful.

The Honorable Alvin K. Hellerstein, p. 9
March 27, 2020

      2.      "[T]ruthfulness, completeness, and reliability" of information and testimony (§ 5K1.1(a)(2)). Pennisi's information was, in the Government's estimation, entirely truthful, complete, and reliable. Pennisi's evidence was often corroborated by the extensive information the Government has already collected (much of which could not necessarily be admitted in Court) on the members and activities of La Cosa Nostra. Pennisi also disclosed negative information about himself that the Government would likely never have uncovered had Pennisi not volunteered it. And despite extensive investigation by well-resourced and desperate defendants, no defense attorney ever raised any negative fact concerning Pennisi that Pennisi himself had not brought to the Government's attention long before testifying.

      3.      "[N]ature and extent" of assistance (§ 5K1.1(a)(3)). Pennisi's cooperation was broad and extensive. In addition to the trial testimony discussed above, Pennisi has provided information on nearly 100 Mafia figures, to include specific crimes committed by many. Although Pennisi's ability to cooperate proactively was limited by the Mafia's suspicion of him, he nonetheless agreed to attempt to do so where possible. Prior to testifying, Pennisi made several recorded calls with targets of the Government's investigations, including one call with a made member of the Luchese Family in which the Family's new leadership was obliquely discussed.

      4.      "[A]ny injury suffered, or any danger or risk of injury to the defendant or his family" resulting from assistance (§ 5K1.1(a)(4)). Pennisi chose to cooperate, and testify publicly, against the Mafia—perhaps the organization most notorious for witness intimidation and retaliation. As such, he accepted significant danger and risk of injury by cooperating. [REDACTED]

      Pennisi has also suffered economically as a result of his cooperation: Immediately before testifying in *Castelle* (when his cooperation became publicly known), Pennisi had to quit a legitimate and well-paid job in the construction industry, because the mob's influence in that industry made it unsafe for him to continue working once his identity as a cooperating witness was confirmed by his testimony. [REDACTED].

      5.      "[T]imeliness" of assistance (§ 5K1.1(a)(5)). Pennisi's cooperation was as timely as any defendant's cooperation can be, because Pennisi chose to begin cooperating without ever being approached, much less arrested, by law enforcement. Pennisi also came forward with ample time before the *Castelle* and *Madonna* trials, allowing the Government to fully use his testimony. And because Pennisi approached the FBI shortly after ceasing active involvement with the mafia, Pennisi's information remains current, [REDACTED].

The Honorable Alvin K. Hellerstein, p. 10
March 27, 2020

## Conclusion

      In light of the facts set forth above, and assuming that Pennisi continues to comply with the terms of his cooperation agreement, commits no further crimes prior to his sentencing, and appears for that sentencing as scheduled, the Government intends to move at sentencing, pursuant to Section 5K1.1 of the Sentencing Guidelines and Section 3553(e) of Title 18, United States Code, that the Court sentence Pennisi in light of the factors set forth in Section 5K1.1(a) of the Sentencing Guidelines.

                                        Respectfully submitted,

                                        GEOFFREY S. BERMAN
                                        United States Attorney

By:        /s/                                 
                                        Jason Swergold
                                        Hagan Scotten
                                        Jacob R. Fiddelman
                                        Assistant United States Attorneys
                                        (212) 637-1023 / 2410 / 1024

cc:    Anthony Strazza, Esq. (by e-mail)